**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>  Plaintiff,<br><br>vs.<br><br>David Alan Hickey,<br><br>  Defendant. | CR 08-1518-PHX-JAT<br><br>**ORDER** |

Pending before the Court is a Motion to Dismiss Indictment (Doc. #24) by Defendant David Alan Hickey. For the following reasons, the Court denies Defendant's Motion.

**I.  BACKGROUND**

On September 13, 1994, Congress passed the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program ("Jacob Wetterling Act") which provides federal funding to states that enact sex offender registration laws commonly referred to as "Megan's Law." 42 U.S.C. § 14071. By 1996, every state, including Texas, had enacted some variation of Megan's Law.

On July 26, 2006, the Adam Walsh Protection and Safety Act of 2006 ("Adam Walsh Act") was signed into law. Pub. L. No. 109-248, 120 Stat. 587 (2006). Title I of the Adam Walsh Act codifies the Sex Offender Registration and Notification Act ("SORNA"), which requires a person convicted of a sex offense to register, and keep current the registration, in

each jurisdiction where the offender resides, works, or attends school.[1] 42 U.S.C. § 16913(a). SORNA's enforcement arm, 18 U.S.C. § 2250, imposes criminal penalties on individuals who are required to register as sex offenders, who travel in interstate commerce and knowingly fail to register or update their registration. Section 16913(d) delegates to the Attorney General the authority to specify the applicability of the subchapter to sex offenders who were convicted before the statute took effect. Accordingly on February 28, 2007, the Department of Justice published an interim rule that applied SORNA to sex offenders convicted prior to the statute's effective date. *See* 28 C.F.R. §§ 72.1-72.3.

On August 26, 1994, Defendant was convicted in Potter County, Texas, of Indecency with a Child in the Third Degree and was sentenced to serve ten years in prison. On March 18, 1998, Defendant signed a pre-release notification form in which he acknowledged his duty to update his registration if and when he moved. (Gov.'s Resp., exh. E.) On March 19, 1998, Defendant registered as a sex offender in Texas in accordance with Texas' variation of Megan's Law. (*Id.*, exh. B.) He signed two additional pre-release notifications on September 16, 2005 (*Id.*, exh. C) and registered on December 20, 2006 (*Id.*, exh. D). Following his release from incarceration, Defendant updated his registration in Texas on June 6 and June 29, 2007. (*Id.*, exh. E.) The latter is his most recent registration.

On December 5, 2008, Defendant was arrested in Arizona and admitted to residing in Arizona for a month without registering. On December 30, 2008, a federal grand jury returned a single count indictment charging Defendant with failing to register as a sex offender in violation of § 2250(a). Defendant was arraigned on the original indictment and entered a plea of not guilty. On April 28, 2009, Defendant filed this Motion.

## II. ANALYSIS

Defendant argues that the Court should dismiss his indictment for three reasons: (1) SORNA violates the Commerce Clause and is therefore unconstitutional; (2) Defendant's due

---

[1] The Adam Walsh Act will effectively repeal the Jacob Wetterling Act three years from SORNA's effective date. Adam Walsh Act § 129.

process rights were violated because he received no notice of his duty to register under SORNA; and (3) SORNA violates the non-delegation doctrine.

### A. SORNA Does Not Violate the Commerce Clause

Under the Commerce Clause, Congress has power "[t]o regulate Commerce . . . among the several states . . . ." U.S. CONST. art. 1, § 8, cl. 3. The Supreme Court's decision in *United States v. Lopez*, 514 U.S. 549 (1995) identified three "jurisdictional hooks" that will bring a statute within the purview of the Commerce Clause power: (1) the use of channels of interstate commerce; (2) the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities; and (3) activities that substantially affect interstate commerce. *Id.* at 558-59; *see also United States v. Morrison*, 529 U.S. 598, 608-09 (2000). Justice Scalia, concurring with the Supreme Court's decision in *Gonzales v. Raich*, 545 U.S. 1 (2005), suggested that, absent one of these jurisdictional hooks, a statute can still be constitutional under the Necessary and Proper Clause, U.S. CONST. art. 1, § 8, cl. 18, if "that regulation is a necessary part of a more general regulation of interstate commerce." *Gonzales*, 545 U.S. at 37. The relevant questions are: (1) whether the end is legitimate under the Commerce Clause, and (2) whether the statute in question is "reasonably adapted" to achieving that end. *Id.*

Defendant argues that § 16913 is unconstitutional because, unlike § 2250 which limits punishment to sex offenders who travel interstate, §16913 has no express jurisdictional element to limit its reach to sex offenders connected with or affecting interstate commerce. (Def.'s Mot. at 2, lines 18-19.)

The Ninth Circuit has not yet faced a Commerce Clause challenge to § 16913. However, several district courts and two federal courts of appeals have faced such challenges, and the vast majority have found § 16913 to be constitutional. *See, e.g., United States v. Howell*, 552 F.3d 709, 716 (8th Cir. 2009); *United States v. Ambert*, 561 F.3d 1202, 1210 (11th Cir. 2009); *United States v. Keleher*, 2008 WL 5054116, at *17 (E.D. Cal. 2008); *United States v. Romeo*, 2009 WL 140422, at *4 (N.D.N.Y. 2009); *United States v. Pena*, 582 F. Supp. 2d 851, 856 (W.D. Tex. 2008). Conversely, several district courts have found

§ 16913 to be unconstitutional, *see*, *e.g.*, *United States v. Waybright*, 561 F. Supp. 2d 1154, 1162-68 (D. Mont. 2008); *United States v. Powers*, 544 F. Supp. 2d 1331, 1333-36 (M.D. Fla. 2008); *United States v. Myers*, 591 F.Supp. 1312, 1330-37 (S.D. Fla. 2008); *United States v. Guzman*, 582 F. Supp. 2d 305, 311-14 (N.D.N.Y. 2008); *United States v. Hall*, 577 F. Supp. 2d 610, 619-22 (N.D.N.Y. 2008); however, the Court finds their arguments unpersuasive. Specifically, the Court joins the Eighth and Eleventh Circuits in finding that § 16913 is constitutional under the Necessary and Proper Clause because: (1) the overarching purpose of SORNA is a legitimate end under the Commerce Clause, and (2) § 16913 is "reasonably adapted" to achieving that purpose.

        **1.**      **The Overarching Purpose of SORNA Is a Legitimate End Under the Commerce Clause**

The Court of Appeals for the Eighth Circuit recently decided this issue in *Howell*, and the Court agrees with the Eighth Circuit's reasoning. *See Howell*, 552 F.3d at 716. Specifically, the Court finds that SORNA's language, statutory scheme, and purpose all support the claim that SORNA was designed to regulate the inter-jurisdictional movement of sex offenders, which puts it squarely within the category of "instrumentalities in interstate commerce."

Regarding the language of SORNA, §16913(a) requires that the sex offender register, and keep current the registration, in *each jurisdiction* in which the offender resides, works, or attends school. Furthermore, § 16913(c) requires that, upon inter-jurisdictional movement, the offender must update his registration in the new jurisdiction, and that the new jurisdiction must notify all other jurisdictions where the offender is required to register. SORNA's focus on registration in various jurisdictions reveals Congress' intent to track the inter-jurisdictional movement of sex offenders.

Regarding the statutory scheme, the Court finds that § 16913 and § 2250 should be considered together in the context of a constitutional challenge because they work together to achieve SORNA's overarching purpose. *See United States v. Scott*, 2009 WL 1510776, at *1 (D. Ariz. 2009); *United States v. Hardeman*, 598 F. Supp. 2d 1040, 1046 (N.D. Calif.

2009). Indeed, both statutes were passed in the Adam Walsh Act, and both are considered part of SORNA. *See* Adam Walsh Act §§ 113, 141. Moreover, neither statute would make sense–or have any effect whatsoever–absent the other. *Hardeman*, 598 F. Supp. 2d at 1046. They are therefore part of a unified statutory scheme. The fact that § 2250, SORNA's sole provision for enforcement, is only triggered by the inter-jurisdictional movement of a sex offender suggests that SORNA was only designed to reach offenders who travel interstate. *See Howell*, 552 F.3d at 716.

Regarding the purpose of SORNA, § 16901 states that the statute's purpose is "to protect the public from sex offenders and offenders against children" by creating "a comprehensive national system for the registration for the registration of [sex offenders]." The comprehensive and national nature of the registration system indicates that Congress intended to regulate registration on an inter-jurisdictional level. *See Howell*, 552 F.3d at 716. Indeed, the fact that Congress left the enforcement of intra-jurisdictional registration to the states, *see* § 16913(e), indicates that Congress recognized that its reach was limited to sex offenders who travel between jurisdictions.

Furthermore, the legislative history supports this reading. *See id*. A House Committee Judiciary Report stated:

> There is a wide disparity among State registration requirements and notification obligations for sex offenders. This lack of uniformity has been exploited by child sexual offenders with tragic consequences. Given the transient nature of sex offenders and the inability of the States to track these offenders, it is conservatively estimated that approximately 20 percent of 400,000 sex offenders are "lost" under State sex offender registry programs.
>
> . . . .
>
> The most significant enforcement issue in the sex offender program is that over 100,000 sex offenders, or nearly one-fifth in the Nation are "missing," meaning that they have not complied with sex offender registration requirements. This typically occurs when the sex offender moves from one State to another. When a sex offender fails to register in a State in which he resides, there is no effective system by which the States can notify each other about the change in a sex offenders [sic] status.

H.R. Rep. No. 109-218, at 23, 26 (2005), *cited in Howell*, 552 F.3d at 716-17. Moreover, in the House floor debate on the Adam Walsh Act, Representative Van Hollen noted the

registration requirement was "replacing a patchwork of individual systems administered and maintained by each State" so sex offenders cannot "slip through the cracks." 152 Cong. Rec. H5730 (2006) (statement of Rep. Van Hollen), *cited in Howell,* 552 F.3d at 717.

The Court therefore finds that SORNA was designed to regulate the inter-jurisdictional movement of sex offenders, which is a legitimate end under Congress' Commerce Clause power.

### 2. § 16913 Is Reasonably Adapted to Regulating the Inter-jurisdictional Movement of Sex Offenders

The Court finds that registration under § 16913 serves as the crucial first step in tracking the inter-jurisdictional movement of sex offenders. As the Eighth Circuit in *Howell* observed:

> In order to monitor the interstate movement of sex offenders, the government must know both where the offender has moved and where the offender originated. Without knowing an offender's initial location, there is nothing to ensure the government would know if the sex offender moved.

*Howell*, 552 F. 3d at 717. Accordingly, the Court finds that § 16913 is reasonably adapted to regulating such inter-jurisdictional movement.

The Court therefore rejects Defendant's argument that SORNA violates the Commerce Clause.

### B. Defendant's Due Process Rights Were Not Violated

Defendant argues that because he received no notice of a duty to register under SORNA, his due process rights were violated. To support this argument, Defendant compares himself to the defendant in *Lambert v. California*, 355 U.S. 225 (1957) who was found not guilty of violating a registration law for ex-felons where she had no knowledge of the law. *See id*. at 229. The Court finds that the holding in *Lambert* does not apply in this case. The Supreme Court in *Lambert* held that the law at issue violated due process in part because "circumstances which might move one to inquire as to the necessity of registration [were] completely lacking." *Id*. In this case, such circumstances are present. Defendant has already registered and updated his registration in Texas, which could move him to inquire as to the

necessity of registration in Arizona. More importantly, Defendant's registration in Texas explicitly required him to register upon entry into another state. (Doc. #32, exh. B, C, D.) Moreover, Defendant's argument that notice of a duty to register on the state level does not satisfy the requirement of notice on the federal level is unconvincing. As the Court of Appeals for the Eighth Circuit in *United States v. Baccam*, 562 F.3d 1197 (8th Cir. 2009) observed, "[I]t would be inconsistent with SORNA's purpose of protecting the public by strengthening the system of sex offender registration not to give effect to state law notifications that relocation requires registration in the new jurisdiction." *Id.* at 1200. Accordingly, the Court finds that Defendant received adequate notice of his duty to register in Arizona to satisfy due process.

The Court therefore rejects Defendant's argument that his due process rights were violated.

### C. SORNA Does Not Violate the Non-Delegation Doctrine

The non-delegation doctrine has its roots in Article I, Section 1 of the U.S. Constitution which states that "[a]ll legislative powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives." U.S. Const. Art. I, § 1. The doctrine asserts that Congress cannot delegate "the essential legislative functions with which it is vested." *Panama Ref. Co. v. Ryan*, 293 U.S. 388, 421 (1935). The Supreme Court in *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394 (1928) established the test for determining whether a delegation of authority is constitutional: where Congress has provided an "intelligible principle" for the recipient of the delegated authority to conform to, the legislative action will not amount to a forbidden delegation of legislative power. *Id.* at 409. An "intelligible principle" exists where "Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority." *American Power & Light Co. v. Securities and Exchange Commission*, 329 U.S. 90, 105 (1946); *see also Mistretta v. United States*, 488 U.S. 361, 372-73 (1989). As the Eleventh Circuit observed in *Ambert*, since 1935, the Supreme Court has not found a single statute to violate the non-delegation doctrine. *Ambert*,

561 F.3d at 1213.

Defendant argues that § 16913(d) violates the non-delegation doctrine when it delegates to the Attorney General the authority to "specify the applicability" of the subchapter to sex offenders convicted prior to the enactment of SORNA ("past offenders").[2] The Court acknowledges that courts are split as to whether Congress delegated the authority to specify the applicability *of the initial registration requirements* to past offenders as suggested by the title of the subsection, or the applicability *of SORNA generally* to past offenders. *Compare United States v. May*, 535 F.3d 912, 918-919 (8th Cir. 2008) (holding that Subsection (d) authorizes the Attorney General to specify the applicability of the initial registration requirements to sex offenders convicted prior to the enactment of SORNA), *with United States v. Madera*, 528 F.3d 852, 857-58 (11th Cir. 2008) (holding that Subsection (d) authorizes the Attorney General to specify the applicability of SORNA to sex offenders convicted prior to the enactment of SORNA). The Court declines to decide this issue because Defendant's argument fails under either interpretation.

Under the Eighth Circuit's interpretation in *May*, Defendant's argument fails because he does not fall within the purview of Subsection (d), which, under this interpretation, only applies to offenders that are "unable to comply with [the initial registration requirements of] Subsection (b)." § 16913(d). Because Defendant has already initially registered, Subsection (d) does not apply to him, and he therefore lacks standing to bring this claim. *See United States v. Hinckley*, 550 F.3d 926, 939 (10th Cir. 2008).

Under the Eleventh Circuit's interpretation in *Madera*, Defendant's argument fails because the Court finds that Congress did, in fact, provide the Attorney General with an intelligible principle to which to conform under the framework provided by the Supreme Court in *American Power & Light Co. See American Power & Light Co.*, 329 U.S. at 105 (holding that if Congress provides: (1) the general policy, (2) the agency which is to apply

---

[2] Referring to this delegation of authority, Defendant cites 42 U.S.C. § 14701. The Court assumes that Defendant intended to cite 42 U.S.C. § 16913(d) as § 14701 was enacted prior to and was effectively repealed by SORNA. *See* Adam Walsh Act § 129.

1 it, and (3) the boundaries of the delegation, then it shall not violate the non-delegation
2 doctrine for failure to provide an intelligible principle). *See also United States v. Ambert*, 561
3 F.3d 1202, 1214 (11th Cir. 2009). Subsection (d) clearly specifies the agency to which the
4 authority is delegated.

Regarding the general policy, Congress clearly set policy goals in § 16901: to protect the public from sex offenders and offenders against children and to establish a comprehensive national system for the registration of those offenders. *See* § 16901. These policy goals suggest that the Attorney General should apply SORNA to past offenders to the extent that it would contribute to the protection of the public and the establishment of a comprehensive national system for the registration of sex offenders. *Ambert*, 561 F.3d at 1214.

Regarding the boundaries of the delegation, Congress constrained the Attorney General's discretion to a narrow and defined category. *Id.* As the Eleventh Circuit in *Ambert* observed, Congress defined the crimes which necessitate registration (§ 16911); where the offender must register (§ 16914(a)); the time period for registration (§ 16913(b)); the method of registration (§ 16913(b), (c)); the nature of information that registrants must provide (§ 16914(a)(1)-(7)); the elements of the new federal crime (§ 2250(a)); and the penalty for violation (§ 2250(a)). *See id.* The Attorney General's discretion is limited to determining, subject to the legislation listed above, how SORNA applies to a limited class–past offenders. Accordingly, the Court finds that Congress sufficiently defined the boundaries of the delegation.

Therefore, the Court rejects Defendant's argument that SORNA violates the non-delegation doctrine.

/ / /
/ / /
/ / /
/ / /
/ / /

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss Indictment (Doc. #24) is **DENIED**.

DATED this 7th day of July, 2009.

James A. Teilborg
United States District Judge